LANCASTER GIN AND COMPRESS COMPANY v. MURRAY GINNING SYSTEM COMPANY.

Delivered May 14, 1898.

**1.  Court and Jury—Directing Verdict.**

The court may direct the jury to return a verdict for one of the parties where the evidence, though conflicting, would not justify a verdict otherwise.

**2.  Ratification—Corporation.**

A corporation by using machinery purchased by one of its promoters in its name before its formal organization, ratifies the contract of purchase.

APPEAL from Dallas.  Tried below before Hon. W. J. J. SMITH.

*Crawford & Crawford,* for appellant.

*Coke & Coke,* for appellee.

RAINEY, ASSOCIATE JUSTICE.—We find the statement of the case as contained in appellant's brief to be correct, and we adopt the same, as follows:

This suit was instituted in the District Court of Dallas County by the Murray Ginning System Company against the Lancaster Gin and Compress Company, on April 18, 1896.  The amended original petition, filed November 17, 1896, in substance alleged:  That in 1895, and prior to the month of August of that year, plaintiff, at the special instance and request of defendant, sold to defendant certain goods, machinery, and appliances, specified in exhibit A attached to the petition, for which defendant promised to pay $2665.35, as follows: one-third cash on delivery, and the balance in equal amounts, to bear date about the date of delivery of the property, and to become due November 1, 1895, and November 1,

1896, to be secured by a chattel mortgage on the property; that the goods were delivered to and accepted by the defendant in July and August, 1895; that on August 17, 1895, and after the delivery of the goods, defendant paid the cash payment of $884.45, but failed and refused to execute the notes or pay the balance. It was further alleged that in July, August, and September, 1895, plaintiff sold and delivered to the defendant certain goods and merchandise of the value of $93, which are set out in the exhibit to the petition.

February 18, 1897, appellant filed its amended original answer: (1) a general denial; (2) specially, that prior to May and August, 1895, defendant was operating five seventy-saw gins and compress at Lancaster, and if plaintiff ever furnished the goods sued for it was for the purpose of completing the ginning plant, and to be used in operating the five seventy-saw gins; that the plaintiff knew that the machinery was to be used in connection with the five seventy-saw gins, and that if defendant ever purchased the machinery it was upon the understanding and agreement that it was entirely adequate, and adapted to the uses for which it was intended—that is, for the operation of the five gins aforesaid. That the machinery and apparatus were intended to be a complete ginning system, to be used in connection with the said five gin stands.

That before any of the machinery was put into the building plaintiff was advised that the machinery would not operate more than four gins, but it insisted that it would operate the five gins; that the machinery was valueless for the purpose for which it was intended. That if the machinery had been adequate for the operation of the five seventy-saw gins, it would have been worth $4000.

Defendant further pleaded as to certain specific parts of the machinery, and asked a judgment against the plaintiff for $2085.

In reply the plaintiff filed a supplemental petition and alleged that all the machinery furnished under the contract with defendant, except the elevators and feeders, was manufactured according to the plans and specifications furnished by defendant; that plaintiff was not consulted as to the fitness of the machinery for the work intended, and did not know the purposes for which the machinery was intended; and that the same was constructed in a good and workmanlike manner, and made out of proper material; that plaintiff had nothing to do with the placing of the machinery in position and made no representation or guaranty in reference to it.

The case was tried by a jury, February 20, 1897. The court instructed the jury to find for the plaintiff in the sum of $1780.90, with interest from the date of the delivery of all the goods mentioned in exhibit A, and for $93, with interest from January 1, 1896. The jury returned a verdict for the plaintiff for $2041.88, upon which judgment was duly entered. Defendant's motion for new trial being overruled, it has duly perfected its appeal.

*Conclusions of Fact.*—In the spring of 1895 S. D. Murray ordered of the Murray Ginning System Company, appellee, certain gin and compress machinery for the appellant Lancaster Gin and Compress Company. The consideration for said machinery was to be paid one-third cash, and the balance in two notes in equal amounts, payable at different times in the future. This machinery was manufactured during the spring or early summer of 1895—the exact date not being definitely shown—and delivered to appellant during July and August of said year. S. D. Murray at the time the machinery was ordered was acting under the instructions of W. F. Ladd, who was the main promoter of the Lancaster Gin and Compress Company. Subsequent to the ordering of said machinery Ladd and Murray entered into the following contract:

"Memorandum of agreement entered into this 8th day of May, 1895, between S. D. Murray of Dallas, and W. F. Ladd of Galveston, Texas, viz.:

"Mr. Murray agrees to furnish plans and specifications for new gin plants to be erected in time for next season at Palmer, Ferris, and Lancaster, and agrees to take charge and exercise general supervision over the same during their construction; also to furnish the machinery needed at Palmer and Ferris, and also at Lancaster, if it can be so arranged in the contracts with Morris & Staples. Also to have charge of such changes in the present plans as may be required. The said Murray further agrees to apply for patents on such improvements in the Rembert machinery as may be discovered in the year 1895, including the cleaner recently designed by him; and also such patentable improvements as may be suggested during the construction of the three plants above mentioned; said patents to be promptly applied for by said S. D. Murray and assigned by said Murray to W. F. Ladd. In consideration of the above, the said Murray is to receive twelve hundred dollars ($1200) for his services and six hundred dollars ($600) in addition, said $600 to cover patent to be applied for on his improved cotton cleaner. Expense of getting patent to be borne by W. F. Ladd. Murray to receive $5 per day and traveling expenses for such time as he is absent from Dallas on the business above referred to."

On May 10, 1895, Ladd and Morris & Staples entered into the following contract:

"It is hereby mutually agreed between Morris & Staples of Lancaster, Texas, and William F. Ladd of Galveston, Texas, acting for himself and associates, that a company shall be formed at Lancaster for the purpose of carrying on a ginning and compressing business, with such rights and privileges as appertain thereto, buying and selling cotton, cotton seed and its products, and such other business as may hereafter be agreed upon, same to be fully set forth in the charter of the company. The name of the company shall be the Lancaster Gin and Compress Company, with headquarters in Galveston. So soon as the cost of making the proposed changes in the plant shall be ascertained, the stock will be issued in proportion to the amount contributed by the respective parties hereto. It is agreed that Morris & Staples shall put in their present plant, real es-

tate, buildings, machinery, and good will, at $8000, of which $5000 shall be paid in stock and $3000 shall be paid them in cash, which $3000 shall be used by them for the purpose of paying off all incumbrances of whatever kind or nature against their present plant, so that it shall be turned over to the company unincumbered of any indebtedness. One thousand dollars per annum shall be allowed the resident manager or managers of the company. This agreement is signed in duplicate, this 10th day of May, 1895."

On June 1, 1895, articles of incorporation were signed by W. F. Ladd, W. H. Seaman, and J. A. Jackson, and the same were filed in the office of the Secretary of State, June 6, 1895. The directors named for the first year were W. F. Ladd, W. H. Seaman, J. A. Jackson, T. A. Morris, and C. C. Staples.

When Ladd entered into the contracts before mentioned he was acting for the parties who finally became the incorporators of appellant company. At the time Morris & Staples entered into the contract above mentioned, they owned a gin plant in the town of Lancaster, which was to be transferred to the appellant company, for which they were to receive $3000 cash, which was duly paid to them, and the balance of $5000 they were to take in stock in the company, which stock was never issued. During the year 1895 said gin plant was operated by said company, said Staples managing said property at a salary of $1000 per year.

The appellee knew nothing of the various contracts between the various parties above mentioned, had nothing whatever to do with their arrangements; but manufactured the machinery for appellant and shipped and delivered it to appellant, who received same, had it erected, and on August 17, 1895, paid the first installment in cash—which was $884.45.

From all the evidence, we think it conclusively appears, and we so find, that Murray, when the machinery was ordered, was acting for the promoters of the Lancaster Gin and Compress Company; that the machinery was made according to his directions, and that appellee knew nothing whatever of the arrangements between Murray and the promoters; that said machinery was delivered to and received by the Lancaster Gin and Compress Company, which had the same erected, and was used by it—but finally laid aside, not being proper for the work it was intended for; and that the amount of the verdict of the jury was the amount due the appellee by appellant at the date of said judgment.

*Conclusions of Law.*—The first error assigned is, "The testimony was conflicting, and the court erred in instructing the jury to return a verdict for the plaintiff for the amount sued for."

We are of the opinion, after duly considering the evidence, that no other legal conclusions could properly have been reached than that appellant was liable to appellee for the value of the machinery, as claimed in the petition; therefore there was no error in the court's instructing the jury to return a verdict for plaintiff.

It is insisted by appellant, that its charter having been procured after the contract for the machinery was made, it was therefore not liable to appellee for the amount due on said contract:

This contention would be correct had there been no ratification of said contract by appellant, or had it not received benefits therefrom. We think the evidence in this case clearly shows that the corporation, after its organization, ratified the acts of the promoters. It received and used the machinery, by which the contract made by Murray for the machinery became its contract, and appellant is liable for the amount due. Railway v. Granger, 86 Texas, 350; Alger on Promoters and Promotion of Corporations, sec. 202; McArthur v. Publishing Co., 51 N. W. Rep., 216; 1 Mora. on Corp., sec. 549.

Appellant requested several special charges; but as no other verdict than that rendered would have been justified under the evidence, the court did not err in refusing to give them. The judgment is affirmed.

*Affirmed.*

Writ of error refused.