## BRADSHAW v. JONES et al.

(Court of Civil Appeals of Texas. Texarkana. Dec. 11, 1912. Rehearing Denied Jan. 9, 1913.)

1. CORPORATIONS (§ 448*) — PROMOTERS—PERSONAL LIABILITY ON CONTRACTS.

Plaintiff was employed by the promoters of a railway company to secure bonuses and subsidies from residents and landowners along the proposed route of the railroad, under a contract by which he was to have certain percentages of the net profits from town sites on the proposed road and subsidies and bonuses. It was contemplated by all parties that a railway corporation was to be organized, and that plaintiff's services were to be performed for the benefit of that enterprise, and that the railway company, when created, should succeed to the rights and liabilities arising under the contract. A corporation was organized, and thereafter plaintiff was in its employ, under such contract. It did not appear that, at the time it was substituted for the promoters, anything was due or had been earned under the contract. *Held*, that plaintiff's right of action for damages from wrongful discharge or for the amount due under the terms of the contract was against the corporation and not against the promoters.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

2. CORPORATIONS (§ 30*) — PROMOTERS — PERSONAL LIABILITY ON CONTRACTS.

Promoters who, in contemplation of the formation of a corporation, make contracts and incur liabilities in its behalf are personally liable unless it is expressly stipulated and agreed that they shall not be so held and the mere fact that the corporation, when organized, assumes the liability does not release the promoters.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 97–100; Dec. Dig. § 30.*]

Appeal from District Court, Taylor County; Thomas L. Blanton, Judge.

Action by H. J. Bradshaw against Morgan Jones and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John Sayles, Perry Sayles, and Dallas Scarborough, all of Abilene, for appellant. J. M. Wagstaff and D. T. Bomar, both of Ft. Worth, for appellees.

HODGES, J. This is an action to recover damages for the breach of a contract, instituted by the appellant against the appellees Morgan Jones, D. T. Bomar, and J. M. Wagstaff. Appellant alleged, in substance, that on or about the 6th day of November, 1909, he entered into a contract with the appellees and other citizens of Abilene, Tex., as promoters of the Abilene Central Railway Company, in which it was agreed that these promoters would construct and operate, or cause to be constructed and operated, a line of railroad extending from a point near Abilene, Tex., in a southeasterly direction to Rising Star, in Eastland county, a distance of about 50 miles; that the construction of this road was to begin immediately and be carried over a route through certain named town sites; that plaintiff was employed to secure bonuses and subsidies from residents and landowners

along the proposed route. The contract was reduced to writing; and is set out in the following letter dated November 18, 1909, written by D. T. Bomar to the plaintiff:

"1. You are to give your time to the enterprise under the direction of Mr. Jones for a period of twelve months from November 6, 1909, and as your compensation for this service, including the procuring of right of way, and such other services as you may perform for the company, you are to receive: (a) Five (5) per cent. of the net profits as they accrue, that are derived from the town sites on said proposed railroad between Abilene and Rising Star, Texas, exclusive of Rising Star. (b) Seven and one-half (7½) per cent. of the net sums collected on subsidies and obtained by you, exclusive of all subsidies at Abilene and Rising Star. (c) Seven and one-half (7½) per cent. of the net profits accruing from options secured by you along said proposed road. It will be necessary for you to give Rising Star the benefit of all subsidies obtained in Eastland county, but notwithstanding this you are to be paid your commission of seven and one-half (7½) per cent. on all subsidies obtained in Eastland county outside of the town of Rising Star. In determining which was obtained in the town and which out of it, it is agreed that all contributions made by persons living in the town of Rising Star or within a radius of two miles thereof, shall be treated as belonging to the town proper, and all other subsidies shall be treated as belonging to the country and on which you are to obtain your commission. (d) The company will advance to you the sum of one hundred ($100.00) dollars per month, together with your reasonable expenses, the amount of which is to be satisfactory to Mr. Jones, during the time that you are engaged in this work under his direction, which amounts will be charged against the net sum accruing to you, under the terms hereof.

"2. Mr. Jones, or the railway company through its executive head, when organized, reserves the right to at any time terminate this agreement, if at any time it is unsatisfactory to either Mr. Jones or the company, and in the event the agreement is terminated, then you are to have such pro rata part of the compensation hereinbefore provided for, as shall be fair and equitable, and in the event you are unable to agree with Mr. Jones or the company on the amount of same, the differences shall be arbitrated between two persons, one of whom shall be selected by Mr. Jones or the company, and in the event they fail to agree, the two shall select a third person and the findings of such arbitrators shall be final."

It is further alleged that plaintiff entered upon the performance of his duties as agreed upon, and continued therein till the 31st day of January, 1910, at which time he was wrongfully discharged and his contract terminated by the appellee Morgan Jones; that the services so rendered by him consisted, among other things, of securing the right of way for the railroad, subsidies and bonuses, surveying the route, and such other engineering work as he was directed to perform by Morgan Jones. Plaintiff further avers that, by reason of the breach of his contract, he has been damaged in the sum of $17,720.67. This amount is the aggregate of commissions which he claims he would have received from the location of town sites and the procuring of bonuses and options on land.

The defendant Jones answered by exceptions and a general denial, and specially pleaded in substance the following facts: That he had, on the 6th day of November, made a contract with certain named citizens of Abilene, Tex., by which he agreed to build a road along the route indicated by the appellant's petition; that the appellant was employed as a civil engineer under the terms of the contract set out in his petition. He alleges that this contract was made for the benefit of the Abilene Central Railway Company, and was to be performed by that company when it was incorporated, and that this was well known to the plaintiff; that this company was incorporated on or about December 9, 1910, with a capital stock of $150,-000 subscribed, and thereafter acquiesced in and took over the agreement with plaintiff, and that plaintiff thereafter dealt with it and accepted payment from it as was originally intended, and is now estopped from setting up or claiming personal liability against defendant; that defendant, as president of the Abilene Central Railway Company, for the company did on January 31, 1910, terminate the contract with plaintiff under and by virtue of the provisions therein contained. He also admits that he breached the contract made with the citizens of Abilene, in which he had agreed to build the railway along the proposed route, and sets up the facts which he claims justified him in so doing. Other matters are pleaded in detail which it is unnecessary to mention. Defendant Bomar, after pleading his privilege to be sued in the county of his residence, and the interposition of some general and special exceptions, adopted the answer of his codefendant Jones.

The cause was submitted to a jury, and a verdict was returned in favor of the defendants Bomar and Wagstaff, and in favor of the plaintiff against the appellee Morgan Jones for the sum of $699.45, from which a credit of $449.45 was deducted, leaving a balance of $250 to be entered as a judgment against Jones. It is from that judgment that this appeal is prosecuted by the appellant, Bradshaw.

[1] There are numerous assignments of error; some of them attacking the court's charge, and others complaining of the admission and rejection of testimony. It will be unnecessary for these assignments to be noticed in detail, if the view which we feel

constrained to take of this case be the correct one. That portion of the evidence in which there seems to be no conflict shows that, at the time the contract here relied on was entered into, it was contemplated by all parties that a railway corporation was to be organized and incorporated, and that the services the appellant was to perform under his contract were for the benefit of that enterprise. It also appears, from an inspection of the writing introduced as the correct embodiment of the terms of that contract, that it was contemplated that the railway company, when created, should succeed to the rights and liabilities arising under that contract. The testimony further shows that on the 8th day of January the railway company, known as the Abilene Central, was incorporated with a capital stock subscribed amounting to $150,000 distributed among 10 different stockholders; that Morgan Jones was elected its president and became its chief executive officer; that from the time of its organization the appellant was in the employ of the railway company, and at the time alleged was discharged from its service by Morgan Jones as its president. We quote the following from appellant's own testimony: "I understood that the contract that was made with me was made on behalf of the proposed railroad that was to be organized to build the railroad between Abilene and Rising Star. I understood that I was dealing with Mr. Jones acting for the promoters of the Abilene Central Railroad. He was the active head of it until organized. I went ahead and performed my services with that understanding. I think the railroad was subsequently organized and incorporated. Mr. Jones became president of it, and I thereafter continued to work for the railroad company. I don't know that I sent in my bill addressed to Mr. Jones as president of the railroad company. They went to him, and they were paid by him. I do not undertake to say that the bills which were paid to me were not paid out of the funds of the Abilene Central Railway Company; my understanding is that they were paid out of the funds of the Abilene Central Railroad Company through Mr. Jones. I looked to Mr. Jones for my money. I was working under Mr. Jones' instructions. I understood that I was working for him personally until the railroad was organized; and, after the railroad was organized, I was working for the railroad, of course. I don't know what pocket Jones got the money out of that he paid me, whether out of his own or out of the railroad company; that part of it didn't make any difference, just so he reimbursed me my expenses and paid me my advances. The contract clearly states that, until the railroad was organized, I was working for Jones, but after that I was working for the railroad; after that I was working for Jones as part of the railroad—as president of it." If this testimony be true—if on the 8th day of January, 1910, 22 days previous to his discharge, the appellant quit the service of Jones and his associates as promoters of a prospective enterprise and accepted employment from the corporation which was in contemplation at the time the original contract was made—upon what ground can he now hold the officers and stockholders of that corporation personally liable either for damages resulting from a breach of the contract by the corporation, or for the fruits he was entitled to receive under the terms of the contract when rightfully terminated? The petition alleges no facts which would impose upon an agent personal liability to a third party for conduct rendered in the service of his principal. If Jones can here be held personally liable for a breach of the contract with appellant, assuming that it was breached, his associates may with equal justice also be held. The personal liability of Jones is shown no more by the facts alleged and proven than it would have been had he, after the organization of the corporation, ceased to have any connection with the business in any manner. If he is liable at all, it must be referred to his original connection with the agreement, and not because he happened to be the executive officer who became at the time the mouthpiece of the corporation when the appellant was discharged. The evidence shows that, when the corporation was organized, it was substituted for Jones in pursuance of the original intention of the parties. It is immaterial whether this suit be one to recover damages for a breach of the contract or one for the fruits which the appellant may claim he is fairly entitled to receive under the terms of the contract arising from a part performance by him. In either event he must proceed against the party responsible at the time his contract was terminated.

[2] It is true that, when promoters in contemplation of the formation of a corporation make contracts and incur liabilities in behalf of the prospective enterprise, they become responsible unless it is expressly stipulated and agreed that they shall not be so held. It is also true that the mere fact that the after-formed corporation, when organized, assumes that liability is not alone sufficient to release those promoters from their personal obligations. But the facts here under consideration are not such as to present a case in which that rule would be applicable. The contract in this instance was one of personal employment in which services were to be rendered by one of the contracting parties. Liability on the part of the employer to any extent depended not solely upon the existence of the contract, but also upon the performance of the services contracted for. There is nothing to show that, at the time the railway company was or-

ganized and became substituted for Jones and his associates, any sum was due or had been earned upon this contract. At that period Jones and his associates had incurred no liability to the appellant for any compensation which he might then or thereafter demand. Their only obligation at that time was to accord to him the right to subsequently continue in service and earn the compensation provided for in his contract. When the enterprise ceased to be theirs and became that of the corporation, and the appellant acquiesced in the transfer of his employment from Jones and his associates to the corporation, he accepted the latter as the substitute for the former. Whatever was done by Jones with reference to this contract after the railway company became a party to it was as the agent of the railway corporation. If the termination was wrongful, his principal alone is responsible. If it was in accordance with the terms of the contract, giving to Jones or the railway company the option to terminate it at any time either saw proper, then the railway company was responsbile for whatever earnings had accrued to the appellant under the terms of the contract up to that time. In this view of the evidence, the appellant shows no right to recover in this suit anything from Jones or his associates. His cause of action, if any, is against the railway company. Hence there is nothing in the rulings of the court of which he can justly complain.

The judgment will therefore be affirmed.