### EXLINE–REIMERS CO. v. LONE STAR LIFE INS. CO.    (No. 7117.)

(Court of Civil Appeals of Texas. Dallas. Nov. 7, 1914. Rehearing Denied Jan. 2, 1915.)

1. CORPORATIONS (§ 448*)—DEBTS INCURRED BY PROMOTERS—LIABILITY OF CORPORATION.

A debt incurred by a promoter of a corporation on its behalf, prior to the filing of its charter, is not an original liability of the cor-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

poration, notwithstanding any promises or representations of the promoter.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

2. CORPORATIONS (§ 448*) — DEBTS INCURRED BY PROMOTER—RATIFICATION—ADOPTION.

A contract by a promoter of a proposed corporation on its behalf cannot, in a technical sense, be ratified after legal existence of the corporation, since "ratification" presupposes a principal existing at the time of the making of the unauthorized contract, but liability arises rather by adoption of the contract by acceptance of its benefits.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

3. CORPORATIONS (§ 448*) — DEBTS INCURRED BY PROMOTER—LIABILITY.

Where corporators of an insurance company, after the filing of its charter, attempted to assign it to a third person with a right to constitute a board of directors, and subsequently the third person selected a board of directors composed of persons not bona fide stockholders, who selected officers, one of whom accepted for the corporation material ordered by the promoter, and promised that the corporation would pay for it, the corporation was not bound for the debt, notwithstanding Rev. St. 1895, art. 3096h, giving corporators the direction of affairs and the perfecting of the organization of the corporation until they shall call a special meeting of the stockholders, for the acts of the corporators and of the directors and officers were void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

4. CORPORATIONS (§ 289*) — OFFICERS — "DE FACTO OFFICER."

Officers of a corporation, not selected in the statutory manner, are not even "de facto officers," and their acts are not binding on the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1240–1245; Dec. Dig. § 289.*

For other definitions, see Words and Phrases, First and Second Series, De Facto Officer.]

5. CORPORATIONS (§ 426*)—DEBTS—LIABILITY—ACQUIESCENCE.

Where the legally elected officers of a corporation repudiated a promise by an officer, who was not even a de facto officer, to pay a debt, when they first learned it was asserted against the corporation, there was no acquiescence in the unauthorized acts.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426.*]

6. CORPORATIONS (§ 425*)—DEBTS—LIABILITY—ESTOPPEL.

Legally constituted officers of a corporation are not estopped from denying unlawful acts done by officers who were not even de facto officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. § 425.*]

7. CORPORATIONS (§ 398*)—DEBTS—LIABILITY.

Officers of a corporation, who are not even de facto officers, are without authority to make a purchase of goods for the corporation or to bind it by adopting an unauthorized contract of the promoter.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1592–1594; Dec. Dig. § 398.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the M. P. Exline Company, prosecuted by the Exline-Reimers Company, against the Lone Star Life Insurance Company. From a judgment for defendant, plaintiff appeals. Affirmed.

L. C. McBride and Allen & Flanary, all of Dallas, for appellant. Coke & Coke, of Dallas, for appellee.

RASBURY, J. This suit was instituted by M. P. Exline Company against appellee, but, pending its determination, appellant, Exline-Reimers Company, acquired the former company's assets and prosecuted the case in its name. The suit was to recover a balance on an account for certain items of stationery, office furniture, supplies, etc., for which appellee was alleged to be liable. Appellee denied by proper pleading all liability for the items of account. No further statement of the pleadings are necessary, since no question of their sufficiency arises.

The rights of the parties on this appeal depend upon the law arising upon practically undisputed facts; the following, supported by the record, being those essential to a disposition of the case: The articles specified in the account sued on were articles necessary to the conduct of the business of life insurance companies and were purchased on requisitions signed Lone Star Life Insurance Company, by J. M. Dawson, who represented L. H. Morgan, to whom the supplies, etc., were delivered. Morgan, claiming to represent the Lone Star Life Insurance Company, promised the account would be paid by the company, and upon such representations appellant relied without other inquiry or investigation. At the time the requisitions were made upon appellant for the supplies, etc., and at the time the same were delivered to Morgan, he was attempting to organize said Lone Star Life Insurance Company, and in pursuance of that object had, on February 2, 1909, interested Messrs. Worsham, Keating, Slaughter, Gannon, Reardon, Baker, Green, Hamilton, and Edwards, all of Dallas, Tex., except the first named, to the extent that they signed articles incorporating the proposed company under certain statutory provisions then existing and delivered same to L. H. Morgan. Morgan retained possession of the articles of incorporation until May 28, 1909, at which time same were filed in the office of the commissioner of insurance, etc., and approved by that official. All the articles covered by the account sued on, except certain items hereafter referred to, were purchased by Morgan, claiming to represent the company, prior to the time of filing the articles of incorporation in the office of the commissioner of insurance. Those who signed the articles of incorporation, learning that Morgan had filed same with the commissioner, called a meeting June 7, 1909, of the incorporators for the purpose of dis-

cussing the status of the company. Morgan attended the meeting. The result of the meeting was that the project was abandoned, and it was agreed that each incorporator should be released from prior tentative subscriptions to the stock of the company; the cause of the abandonment being the inability or refusal of any one of the incorporators to assume direction of the affairs of the proposed company. At this time Morgan requested that the incorporators assign the charter to him if they intended to abandon the matter, since he had spent much time and money in attempting its promotion, and since he believed he could organize same without reference to the participation therein of those present. This the incorporators agreed to do, and by direction of counsel for Morgan, in writing, assigned to him all their respective rights, title, and interest in the charter, on condition that the assignors should be released absolutely from all liability to the proposed company on their proposed subscriptions to stock, and giving to Morgan by the assignment the further right to assign to other persons the interests so assigned to him, as well as the right to constitute a board of directors for the company. Thereafter, on June 11, 1909, in pursuance of the authority contained in said assignment, a meeting of certain gentlemen claiming to be stockholders of the company was held; those present being Messrs. Morgan, Swain, Dawson, and Clark. These purported stockholders by their recorded minutes of the meeting, recited that L. H. Morgan had contributed $6,000 in money to the company, and directed that in lieu thereof stock in the company be issued to him in the sum of $4,000; the remainder so contributed to be subject to future adjustment. By direction of Morgan those acting as stockholders further directed that one share of stock directed to be issued to him be issued in turn each to Swain, Clark, Anderson, and Hannah, and 36 shares to J. M. Dawson. The assignment of the charter to Morgan by the incorporators of the company was acknowledged and ratified at said meeting, and all liability on the part of the incorporators to the company on account of their subscriptions declared canceled.

The individuals above named, acting as stockholders, also elected themselves a board of directors, and adjourned, and immediately convened as directors and elected Swain president, Hannah vice president, Dawson secretary and treasurer. This action was in turn approved, and the president authorized to make such contracts for stock subscriptions and to transact such other business as the interests of the company should require. Neither Morgan nor those to whom stock was directed to be issued at the time of the related stockholders' and directors' meetings were actual subscribers to the stock of the Lone Star Life Insurance Company. A few days after the meetings just mentioned, and on June 15, 1909, the gentlemen who had signed the articles of incorporation and executed the assignment of the charter to Morgan individually and collectively signed letters addressed to L. H. Morgan & Co., indorsing the proposed company, referring to themselves as charter members, and in some instances as subscribers to the stock or as intending to subscribe thereto. Subsequent to all the transactions detailed, and in December, 1909, or January, 1910, the incorporators, due to complaints of those who had subscribed to stock at the solicitation of Morgan, concluded that liability attached to them as incorporators, notwithstanding the assignment of the charter and the attempted cancellation of any liability on their part by those nominated by Morgan at the claimed stockholders' meeting of June 11, 1909, whereupon they assumed control of the corporation without objection, so far as the testimony discloses, on the part of Morgan and the officers selected by him, subscribed enough stock or secured subscriptions for enough stock to comply with the laws in that respect, as well as other things necessary to place the company in a position to commence operations, which was accomplished about March, 1910, at which time all connection of the directors and officers selected by Morgan with the company ceased. The directors and officers selected as last detailed promptly denied all liability for appellant's debt when presented for payment, and repudiated the acts of Dawson in accepting the articles and promising payment.

At the conclusion of the trial and upon the evidence as adduced, the substance of the essential features of which we have related, the trial judge instructed verdict for the defendant, and in accordance with which judgment was entered.

[1] The controlling question in the case, and the one upon which the final disposition of the case depends, is whether appellee is liable for the debt sued on by reason of the related acts of the corporators and the subsequent acts of the officers of the corporation claimed to have been elected by the directors of the corporation at the meeting of June 11, 1909, and for that reason we shall not discuss the assignments seriatim. We think it can be safely said, based upon the evidence in the record, that liability in no respect can be urged against the corporation as such for the acts either of Morgan, who was promoting the company at the time the debt was incurred, or those who intended to become corporators, had prior to the act of legal incorporation, which was at the time when the articles were filed in the office of the commissioner of insurance, or May 28, 1909. The reason is obvious, since without legal existence by the corporation there can be no liability. Railway v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837; Lancaster Gin & Compress Co v. Murray, etc., 19

Tex. Civ. App. 110, 47 S. W. 387. As shown by our statement of the facts, the debt sued on, except certain items to be hereafter referred to, was incurred by Morgan, the promoter, on behalf of the corporation prior to the filing of the charter, and hence there was no original liability on the part of appellee, nor could any be created by any promise or representations of Morgan, who was promoting the company.

[2] It is said in effect in Railway Co. v. Granger, supra, that contracts made by a promoter on behalf of a proposed corporation, even though within the scope of its general authority, cannot in a technical sense be ratified after legal existence, since ratification presupposes a principal existing at the time of making the unauthorized contract. Liability in such cases, it is further said, arises rather by adoption of the contract by acceptance of its benefits than by a recognized technical ratification by the corporation after its legal organization. The rule is said in other language to be that:

"Those who undertake to organize a corporation are not in any sense its agents before it comes into existence. They cannot affect it by their declarations or representations, or bind it by their engagements made in its behalf; but, after coming into existence, the corporation may make their engagements its own by express agreement or by ratification; and this ratification or adoption may be by express corporate action or by any of the other modes by which corporations may ratify or adopt the unauthorized or officious acts of others made in their behalf, as where the corporation voluntarily accepts the benefits accruing to it from the engagement of its promoters, after full knowledge, and having full liberty to decline the same." 10 Cyc. 262.

[3] Such, then, being the rule, we find, on the issue of adoption after incorporation, that the facts in the instant case show no more nor less than that, after the charter was filed and approved, the corporators attempted to assign it to Morgan with the concurrent right to constitute thereunder a board of directors, and that thereafter Morgan did select and constitute a board of directors, who in turn selected officers, one of whom accepted the material, etc., and promised appellant that the appellee would pay it. Upon such facts, counsel for appellant ably and earnestly urges appellee is bound for the debt, and bases such contention largely upon the provision of the act under which the appellee was incorporated. This act is chapter 4, tit. 18, Revised Statutes 1895, authorizing the incorporation of home life and accident insurance companies, and since repealed and substituted. Aside from those provisions having reference to the manner, method, and other details of incorporation in reference to capital stock, etc., the act directs, in effect, that, before companies organized thereunder may sell stock or do the other things contemplated thereby, it shall present to the commissioner of insurance its articles of incorporation for approval and filing. After such approval and filing, the required capital stock subscriptions must be secured, and the securities in which such subscriptions have been invested submitted to and approved by the commissioner. When such provisions of the law have been complied with, the commissioner of insurance is required to furnish the corporation a certificate reciting such compliance, whereupon the corporation is permitted to transact. the business contemplated by the act. The act also provides that the corporators named in the charter shall have the direction of its affairs and the perfection of its organization from the issuance of the permit until such corporators shall call a meeting of the stockholders, and who in turn shall have elected directors and officers for the purpose of transacting a general business. Articles 3096h, 3096j, 3096n, R. S. 1895.

Keeping in mind the fact that no one claiming to represent the corporation after incorporation had promised to pay the debt sued for, and that it was at no time originally liable therefor, did the assignment to Morgan and the election of stockholders, directors, and officers thereunder, and their acceptance of the articles sued for, create any liability against appellee by virtue of the authority conferred upon the corporators by article 3096h? We conclude not, since in our opinion the acts of the corporators, as well as those of the stockholders, directors, and officers elected as stated, were void. That portion of the act that confers upon the corporators authority to perfect the organization of the company and direct its affairs pending final authority from the state to transact a general business was not intended to be used as a means of conferring upon the corporators greater authority than may be found in the act itself. There is nothing in the act which would by reasonable deduction or inference authorize the corporators by simple assignment of the charter to confer upon others even the authority conferred upon them, much less authorize their assignee to do that which the state denied the original corporators the right to do. Without in the least restricting the authority conferred upon the corporators, it is clear that their authority, after the charter was approved, was to do the things specified by the act; i. e., sell stock, invest same, call a meeting of the stockholders, and to do any and all other incidental or necessary things thereto or reasonably to be inferred. The reason why such authority was not intended to be conferred are not far to find.

[4] Those who are to become stockholders, and upon whom the right and duty of selecting directors and officers for the transaction of the general business of the corporation is conferred, after sufficient stock is subscribed, may not be made responsible in such manner. They have the right to assume and demand, before the funds they have contributed to the company are expended, that directors and officers will be selected

.in the manner pointed out by the act authorizing the incorporation, and not otherwise. Officers selected in any other manner are not officers, certainly not de jure officers, and in our opinion not even de facto officers. It is said:

"A defacto authority cannot arise when there has been absolutely no election or appointment, or, what is equivalent, one that is absolutely null and void, and not merely irregular or informal;" or "where there has been no assertion of the right to exercise the office, except in the very instance where it is questioned;" or "where there has been no acquiescence in the official acts of the person claiming such authority, either on the part of the body for whom he professes to act or of any one else. Otherwise the simple bold assertion of a right to an office would bind such corporation or body by the acts of the usurper, and parties suffering from his unlawful acts could never question them." Franco-Texan Land Co. v. Laigle, 59 Tex. 339.

[5] The testimony in the instant case brings the acts of the pretended officers of appellee well within the rule, since the election of Dawson, who agreed on the part of the corporation to pay the debt, as well as the other officers, was void in that it was the right of the subscribers to the stock, not the corporators, to elect their directors and officers, and the corporators, as a consequence, were without authority to confer that right upon Morgan. Nor was there any acquiescence in the acts of such officers, since the officers of the company legally constituted repudiated the promise to pay the debt when they first learned it was being asserted against them.

[6] It is further said in the case cited:

"It is only where the act of the corporation sought to be denied is merely irregular or informal or defective in no vital respect that any one participating in it is estopped to deny its validity. It if be absolutely void, and liable to be treated as a nullity in any proceeding where called in question, no participation in such act could give it vitality, even as to one who took part in it."

Thus it further appears that not only the officers legally constituted are not estopped to deny the unlawful acts, but even those who attempted to confer that right are not, so far as relates to the corporation as such. Nor do the facts proven on trial bring this suit within the modification of the general rule stated in the case last cited, being instances where those entitled to complete the organization, while having the right of organization, have neglected in the organization to observe some of the details provided by the act authorizing incorporation, such as a failure to secure subscriptions for the full amount of the capital stock. Such a case is not presented by the record before us. Gentlemen, neither corporators nor stockholders, acting upon authority not conferred by law, and which, as a consequence, could not be conferred by the corporators pretending to be stockholders, met and agreed to reimburse Morgan for certain money expended in promoting the corporation by issuing him stock in the corporation, a portion of which he in turn issued to them, and whereupon, based upon the stock so acquired, they held a stockholders' meeting, electing directors, who in turn elected officers, and the officers so elected in turn accepted the articles sued for and promised to pay for same. It is not necessary to discuss the acts of the corporators, since same is in no sense an issue in the suit.

[7] A portion of the articles specified in the account sued on was furnished after the pretended election of directors and officers, but we think such officers had no more authority to make an original purchase than they had to bind the present corporation by adopting the unauthorized contract of Morgan.

Entertaining the views expressed, it becomes our duty to affirm the judgment of the lower court.

Affirmed.