## PHIL H. PIERCE CO. v. RUDE et al.
### (No. 9675.)

(Court of Civil Appeals of Texas. Dallas.
Feb. 5, 1927. Rehearing Denied
March 12, 1927.)

1. **Corporations** ⚖➔448(2)—**Contract made by promoters for corporation may be adopted by corporation, which then becomes liable thereon.**

Contract made by promoters of corporation on its behalf may be adopted by corporation when organized, and the corporation is then liable both at law and in equity on the contract itself and not merely for benefits received.

2. **Corporations** ⚖➔519(3)—**Evidence held to show that corporation adopted lease contract made on its behalf by its promoters.**

Evidence *held* to show that corporation, organized for prosecution of picture show business, by its acts adopted lease contract made on its behalf by its promoters, though there was no formal resolution adopting the contract.

3. **Corporations** ⚖➔316(1)—**Contracts of corporation with director are at most voidable.**

Contracts by corporation with director are never void, though sometimes they are voidable.

4. **Corporations** ⚖➔317(1) — **Rule invalidating corporation's contracts with director in case of fraud held inapplicable, where persons making contract owned all of stock.**

Rule that would ordinarily invalidate contracts made by corporation with director in cases of bad faith or fraud in their execution *held* inapplicable, where those who made the contract were owners of the entire stock of the corporation.

5. **Corporations** ⚖➔316(5)—**One having no interest in corporation might not attack corporation's contract with director, made in good faith.**

Lease contract of corporation, made with director thereof in good faith for reasonable rental value without fraud or overreaching, might not be attacked by one having no interest in the corporation on the ground that it was made with a director thereof.

6. **Landlord and tenant** ⚖➔248(1)—**Notice of landlord's statutory lien and rights thereunder held chargeable to one selling pipe organ to lessee.**

One selling pipe organ to lessee, which was installed in the leased premises, *held* chargeable with notice of landlord's statutory lien for rent and his rights with reference thereto.

7. **Chattel mortgages** ⚖➔138(3) — **Landlord's lien for rent held entitled to priority over chattel mortgage on pipe organ for unpaid purchase price.**

Where 10-year lease began May 1st and mortgage lien on pipe organ installed in leased premises in August was filed December 19, *held* that landlord's lien on pipe organ for rent for first year had already attached and was prior to the lien of the mortgagee for unpaid purchase price.

8. **Landlord and tenant** ⚖➔223(2) — **Landlord converting property covered by lien for rents must credit claim for rent with value of property.**

Where landlord converts property to which his lien for unpaid rents has attached, he must credit the full market value thereof on the claim for rent against the tenant.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by I. Rude against the Phil H. Pierce Company and others. From an adverse judgment, the Phil H. Pierce Company appeals. Affirmed.

J. Lee Zumwalt, of Dallas, for appellant.
McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellees.

JONES, C. J. Appellant, Phil H. Pierce Company, a corporation, is the unsuccessful defendant in a suit in the district court of Dallas county by appellee I. Rude against appellant and the Popular Amusement Company, a corporation. The cause was tried before the court without the intervention of a jury, and upon the request of appellant the trial court has filed findings of fact and conclusions of law. These findings of fact were in the main excepted to by appellant and errors assigned thereon, but they are all sustained by evidence and are adopted as the findings of this court. From these findings of fact and the undisputed evidence on other facts, we deduce the following statement:

Appellee I. Rude and two associates conceived the idea of forming a corporation for the purpose of entering the picture show business in the city of Dallas. To consummate this purpose they organized a corporation, with a capital stock of $50,000, all of which was subscribed by themselves, appellee subscribing for one-half thereof. On the 5th day of April, 1922, they drafted their charter, placed in the bank, as paid-up subscriptions on this stock, $37,600 to the credit of the proposed corporation, appellee depositing one-half of this sum. The three promoters were named as directors for the first year, and Gohlman was elected president, Goodwin vice president, and appellee secretary-treasurer, of the Popular Amusement Company, the name given the corporation.

Appellee owned a two-story brick building covering a lot 50x200 feet on Elm street in the heart of the business district of the city. This was considered by the promoters a desirable location for their contemplated business, and on the same date a lease contract was entered between Gohlman and Goodwin, representing the proposed corporation, and Rude, representing himself, whereby a lease of the premises for ten years was made by Rude to the corporation at an annual rental of $30,000, payable in monthly installments.

⚖➔For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The corporation was given the right to change the existing building to one suitable to its business. These articles of incorporation were duly filed with the secretary of state and a charter issued on the 7th of April, 1922. Possession of the premises was to be delivered to the corporation on May 1st and the monthly rental to begin June 1, 1922.

The Phil H. Pierce Company, then a partnership, through its representative, Phil H. Pierce, on April 13, 1922, sold to the corporation, acting through its president, Gohlman, a pipe organ that is the subject-matter of this litigation. This sale contract contemplated that the larger portion of the consideration should be represented by deferred payments, to be secured by a lien on this organ. The organ was capable of being attached to the building, and was actually attached thereto, when it was installed, and became a fixture of the building.

It was contemplated by the promoters that a suitable building could be erected for $40,000, but the building when erected exceeded $100,000 in cost, it not being built under the contract plan. Its erection was under the direction of Gohlman and Goodwin, who were experienced picture show men, appellee having no experience in this kind of business and being absent from the state during the greater part of the time that the building was being constructed. Because of the cost of the building far exceeding that which was contemplated, the capital stock was, in November, increased to $125,000, appellee subscribing for the $75,000 increase. Appellee paid in, at different times, his entire stock subscription of $100,000, and an additional sum of $3,000 or $4,000. Practically all of this went into the building. His two associates did not pay anything in addition to their first payment, which did not represent all the stock subscribed by them.

The organ was installed some time in August, 1922, and on December 9, 1922, the business was opened. On the 19th of December the chattel mortgage on the pipe organ was executed and filed for record. It contained no description of the land on which the building was situated, and the description of the organ was very meager. Rent for the months of June, July, and August was promptly paid, but no other rent was paid, and on February 1, 1923, the corporation ceased to operate the business, and possession of the building was delivered to appellee because of the corporation's default in five months' rent, aggregating the sum of $12,500. The proceeds of the business during the time it was conducted were hardly sufficient to pay its running expenses exclusive of the rent.

The Popular Amusement Company defaulted in payment of the notes due on the purchase price of the said organ, and on the 28th day of June, 1923, Phil H. Pierce Company recovered judgment against the Popular Amusement Company, the sole defendant in that suit, in the sum of $8,973.29, of principal, interest, and attorney fees, together with a foreclosure of the mortgage lien on said organ. The amount of the judgment correctly represented the indebtedness declared on. At the time this suit was filed the said organ was in the possession of I. Rude who had leased the building to other tenants, operating the same character of business, and was in use by these tenants in the conduct of this business. An order of sale, obtained under this judgment, was placed in the hands of the sheriff of Dallas county, but before same was executed this suit was filed against the Popular Amusement Company for the balance due on the rental debt, and against the Phil H. Pierce Company and the sheriff of Dallas county, to enjoin them from executing the order of sale, and a temporary writ of injunction was issued. On the trial of the case Rude dismissed his suit as to the sheriff and recovered judgment against Popular Amusement Company for $12,500, less $6,000, the value of the property converted by Rude, together with interest at 10 per cent. per annum and 10 per cent. additional as attorney fee, amounting to $8,580, with a decree that his landlord lien is superior to the mortgage lien asserted by appellant, and a foreclosure of such lien on the organ. The lien of appellant was declared to be a valid but inferior lien to Rude's lien, and the judgment directed that if the organ, at the foreclosure sale, should sell for more than the judgment in favor of Rude, the balance should be paid to appellant. Appellant was permanently enjoined from executing its order of sale.

We shall not undertake to discuss in detail the numerous assignments of error and propositions of law urged by appellant as grounds for reversal of this case. Suffice it to say the questions raised are warranted by its pleadings and based on proper assignments of error.

The case, however, instead of being filled with perplexities and complicated with many questions of law, as appellant's numerous assignments of error seem to indicate, is really a simple one. There is no evidence of fraud or of overreaching, and the only questions for determination are: First, was the contract of lease, executed before the issuance of the charter of the corporation, adopted by the corporation after it came into existence? Second, can appellant avoid the rental contract because Rude was a director of the corporation? And, third, is appellee's statutory lien for rent superior to the mortgage lien of appellant?

[1] The general rule of law in this country is that a contract made by the promoters of a corporation on its behalf may be adopted or ratified by the corporation when organized, and that the corporation is then li-

able, both at law and in equity, on the contract itself and not merely for the benefits which it has received. Fletcher, Cyclopedia Corporations, vol. 1, § 152. This rule has been frequently applied in our state. Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837; McDonough v. First Nat. Bank of Houston, 34 Tex. 309; Lancaster Gin & Compress Co. v. Murray Gin Co., 19 Tex. Civ. App. 110, 47 S. W. 387; Exline-Reimers Co. v. Lone Star Life Ins. Co. (Tex. Civ. App.) 171 S. W. 1060; Bradshaw v. Jones (Tex. Civ. App.) 152 S. W. 695.

[2] While there was no formal resolution adopting this contract by the directors of the corporation after it came into legal existence, yet its acts after such time indisputably show such adoption On May 1, 1922, as soon as it could do so under its contract, and while the funds of the corporation had been untouched, the corporation took possession of the leased premises and began the work of wrecking the mercantile building preparatory to the erection of a building suitable for the business to be engaged in. This building was erected, and the corporation opened its business therein. These acts are consistent only with the theory that the corporation adopted the lease contract entered into in its behalf by its promoters. We therefore hold that this lease contract became and was the binding contract of the corporation, and all assignments of error in reference to this issue are overruled.

[3-5] As to the contention made by appellant to the effect that the lease contract should be declared invalid because it was entered into with a director of the corporation, such contracts are never void but sometimes are voidable. But even the rule, in cases of bad faith or fraud in their execution, that would ordinarily pronounce their invalidity, does not apply in the instant case, because those who made the contract were owners of the entire stock of this corporation. Fletcher on Contracts, vol. 4, § 2344. In the instant case, however, the lease was entered into in good faith, was made for the reasonable rental value of the premises, with no evidence of fraud or overreaching; and with the complaining party having no interest in the corporation, appellant does not bring itself within the rule that would permit an attack on this contract because of the manner of its execution. So in any event there is no merit in this contention, and all assignments of error on this issue are overruled.

[6, 7] As to the priority of lien, it appears that the organ was installed some time during the month of August, and that Rude had no notice that there was any contract lien existing in favor of appellant. The law charged appellant with notice of appellee's lien and his rights with reference thereto. The mortgage lien was not recorded until the 19th of December, 1922, some three or four months after the organ was installed. Appellee's lien had therefore already attached for rents for the first year of the lease before the recording of this mortgage, and hence became the prior lien. Low v. Troy Laundry Mach. Co. (Tex. Civ. App.) 160 S. W. 136. We therefore hold that appellee's landlord's lien was prior to the lien of appellant.

[8] Appellee resumed possession of the building on the 1st day of February, 1923, because of a default in five months' rent, representing an indebtedness of $12,500. When he took possession of the building he converted all the property on which his lien for rents attached except the said organ and, of course, must answer for the full market value of the converted property and credit his rent claim with the value of the converted property. The court found this property to be of the value of $6,000, and placed such credit against appellee's said claim, leaving a balance of the principal due of $6,500. We believe that as to this balance, augmented by the contract interest and attorney fees, appellee's lien is prior to appellant's lien, and that the court entered the correct judgment in reference thereto.

All assignments of error are overruled, and the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

Our attention has been called by motion to an error made in the findings of fact in the original opinion in this case. It was stated in this opinion that the money paid in to the treasurer of the corporation by its promoters was untouched on May first, when the corporation, Popular Amusement Company, took possession of the leased building. It appears that checks amounting to $7,500 were paid by the corporation to appellee Rude on the 8th of April as advance payments on the rent, for the first three months under the lease contract of the building. It also appears that a thousand dollars was paid to appellant before May first as the advance payment on the organ in controversy which was ordered by the corporation for use in this building. Each of these payments not only amounted to a recognition of the existence of the lease contract, but was a clear ratification of same, and the error pointed out in the findings of fact in nowise affects the judgment rendered.

The motions for rehearing and for additional findings of fact are overruled.